1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

4

## May 13, 2020

SEAN F. McAVOY, CLERK

5        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF WASHINGTON

6

7    JOHNATHON L.,[1]                    No.    4:19-CV-05146-EFS

8                    Plaintiff,

9            v.                          **ORDER DENYING PLAINTIFF'S
                                         SUMMARY-JUDGMENT MOTION
10   ANDREW M. SAUL, the Commissioner    AND GRANTING DEFENDANT'S
     of Social Security,[2]              SUMMARY-JUDGMENT MOTION**

11

12                   Defendant.

13

14        Before the Court are the parties' cross summary-judgment motions.[3]

15   Plaintiff Johnathon L. appeals the denial of benefits by the Administrative Law

16   Judge (ALJ). He alleges the ALJ erred by 1) improperly weighing the medical

17   _____

18   [1] To protect the privacy of the social-security Plaintiff, the Court refers to him by

19   first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

20   [2] Because Andrew Saul is the Commissioner of the Social Security Administration,

21   the Court substitutes him as the Defendant. *See* Fed. R. Civ. P. 25(d).

22   [3] ECF Nos. 9 & 10.

23

opinions; 2) discounting Plaintiff's symptom reports; 3) failing to properly consider lay statements; and 4) improperly assessing Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 9, and grants the Commissioner's Motion for Summary Judgment, ECF No. 10.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[4] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[5] If the claimant is engaged in substantial gainful activity, benefits are denied.[6] If not, the disability-evaluation proceeds to step two.[7]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[4] 20 C.F.R. § 416.920(a).

[5] *Id.* § 416.920(a)(4)(i).

[6] *Id.* § 416.920(b).

[7] *Id.* § 416.920(b).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

1

2

or mental ability to do basic work activities.[8] If the claimant does not, benefits are

denied.[9] If the claimant does, the disability-evaluation proceeds to step three.[10]

3

4

5

6

7

Step three compares the claimant's impairment(s) to several recognized by

the Commissioner to be so severe as to preclude substantial gainful activity.[11] If an

impairment meets or equals one of the listed impairments, the claimant is

conclusively presumed to be disabled.[12] If an impairment does not, the disability-

evaluation proceeds to step four.

8

9

10

11

12

Step four assesses whether an impairment prevents the claimant from

performing work he performed in the past by determining the claimant's residual

functional capacity (RFC).[13] If the claimant is able to perform prior work, benefits

are denied.[14] If the claimant cannot perform prior work, the disability-evaluation

proceeds to step five.

13

14

15

Step five, the final step, assesses whether the claimant can perform other

substantial gainful work—work that exists in significant numbers in the national

16

17

18

19

20

21

22

23

---

[8] 20 C.F.R. § 416.920(a)(4)(ii).

[9] *Id.* § 416.920(c).

[10] *Id.* § 416.920(c).

[11] *Id.* § 416.920(a)(4)(iii).

[12] *Id.* § 416.920(d).

[13] *Id.* § 416.920(a)(4)(iv).

[14] *Id.*

economy—in light of the claimant's RFC, age, education, and work experience.[15] If so, benefits are denied. If not, benefits are granted.[16]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[17] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[18]

## II.    Factual and Procedural Summary

Plaintiff filed a Title XVI application, alleging a disability onset date of August 1, 2012.[19] His claim was denied initially and upon reconsideration.[20] A telephonic administrative hearing was held before Administrative Law Judge Donna L. Walker.[21]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since November 23, 2015, the application date;

---

[15] 20 C.F.R. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[16] 20 C.F.R. § 416.920(g).

[17] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[18] *Id.*

[19] AR 76.

[20] AR 72 & 97.

[21] AR 34-63.

- Step two: Plaintiff had the following medically determinable severe impairments: unspecified depressive disorder; unspecified anxiety disorder; unspecified personality disorder with anti-social, paranoid and borderline traits, by history; attention deficit hyperactivity disorder, by history; post-traumatic stress disorder; and unspecified cannabis dependence disorder;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels:

  Regarding mental abilities, [Plaintiff] has the ability to understand, remember or apply information that is simple and routine. Regarding interaction with others, [Plaintiff] would work best in an environment in proximity to, but not close cooperation, with co-workers and supervisors, and should work in an environment that does not require direct interaction with the public. Regarding the ability to concentrate, persist or maintain pace, [Plaintiff] has the ability, with legally required breaks, to focus attention on work activities and stay on task at a sustained rate; complete tasks in a timely manner; sustain an ordinary routine; regularly attend work; and work a full day without needing more than the allotted number or length of rest periods. Regarding the ability to adapt or manage, [Plaintiff] would work best in an environment that is routine and predictable, where goals and plans are clearly expressed, but does have the ability to respond appropriately, distinguish between acceptable and unacceptable work performance; or be aware of normal hazards and take appropriate precautions.

- Step four: Plaintiff has no past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff was capable of performing work that existed in significant numbers in the national economy, such as agricultural sorter, photocopy machine operator, and industrial cleaner.[22]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the opinions of state agency psychological consultants Michael Brown, PhD., Kristine Harrison, Psy.D., and John Gilbert, Ph.D.; and the opinion of CeCilia Cooper, Ph.D.; and

- little weight to the opinions of Philip Barnard, Ph.D., NK Marks, Ph.D., and Brent Bingham, D.O.

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23] And the ALJ gave little weight to the lay testimony of Plaintiff's guardian.[24]

---

[22] AR 25-26.

[23] AR 21-25.

[24] AR 25.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1

2

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[25] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[26] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[27] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[29] The Court considers the entire record as a whole.[30]

---

[25] AR 1.

[26] 42 U.S.C. § 405(g).

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[28] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[29] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[30] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th

Further, the Court may not reverse an ALJ decision due to a harmless error.[31] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[32] The party appealing the ALJ's decision generally bears the burden of establishing harm.[33]

### IV.    Analysis

**A.    Medical Opinions: Plaintiff fails to establish consequential error.**

Plaintiff challenges the ALJ's assessment of the opinions of Dr. Philip Barnard, Dr. CeCilia Cooper, Dr. NK Marks, and Dr. Dana Harmon.

The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a reviewing physician who neither treated nor examined the claimant.[34] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a

_____

Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[31] *Molina*, 674 F.3d at 1111.

[32] *Id.* at 1115 (quotation and citation omitted).

[33] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[34] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

reviewing physician.[35] When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.[36] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source may be rejected for specific and germane reasons supported by substantial evidence.[37] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[38]

As discussed below, the Court finds Plaintiff fails to establish that the ALJ consequentially erred when weighing the medical opinions.

1.    Dr. Barnard

Plaintiff challenges the ALJ's assignment of little weight to Dr. Barnard's opinion. On August 26, 2014, Dr. Barnard performed a psychological interview with Plaintiff and administered a battery of neuropsychological tests.[39] Dr. Barnard found Plaintiff demonstrated Intermittent Explosive Disorder, exhibited

---

[35] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[36] *Lester*, 81 F.3d at 830.

[37] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[38] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[39] AR 327-33.

Specific Learning Disorder with Impairment in Written Language, and demonstrated Mixed Personality Disorder with Paranoid and Borderline Features.[40] Dr. Barnard administered the following tests:

- Wechsler Adult Intelligence Scale (WAIS)-IV, which showed a Full Scale IQ of 96, Verbal Comprehension Measures of 95, Perceptual Reasoning Measure score of 113, Working Memory Measure score of 86, and Processing Speed Measure score of 86;

- Woodcock-Johnson III, which showed deficiencies in terms of Plaintiff's written language abilities;

- Seashore Rhythm Test, which showed a mild range of impairments; Speech-Sounds Perception Test, which showed a score within the normal range; and Conners' Continuous Performance Test. Dr. Barnard opined that these test results do not suggest that Plaintiff has a disorder characterized by attention deficits, such as ADHD, and Plaintiff "no longer exhibits significant problems with sustained attention and concentration."

- Minnesota Multiphasic Personality Inventory-2-RF, which showed an invalid profile with high elevation on the Infrequent Somatic Responses Scale and the Response Bias Scale, and a high elevation on a Thought Dysfunction Scale;

- Neuropsychological Deficit Scale, which indicated no significant neuropsychological impairment, no impairment in terms of abstract thinking/problem-solving abilities, and no impairment in terms of Plaintiff's ability to learn new tasks;

- Component on the Tactual Performance Test, which showed a mild range of impairment; and

- Novaco Anger Scale, which showed high elevations on scales indicating difficulty in controlling angry reactions.

---

[40] AR 333.

Dr. Barnard opined that Plaintiff was at "a moderately high risk to offend in an aggressive manner toward others, whether verbally and/or physically . . . [and] not stable in terms of his mental health issues currently."[41] Based on these mental limitations, Dr. Barnard opined that Plaintiff "needs to be evaluated by a psychiatrist to consider appropriate medication and be involved in an individual psychotherapy relationship on at least an every-other-week basis for a significant time." Dr. Barnard opined that Plaintiff "would need to demonstrate compliance with treatment and emotional stability for at least a six-month period of time before consideration of moving ahead with a job placement for him . . . [and that] there is no indication [Plaintiff] would be gainfully employed successfully with the current emotional instability which he exhibits."[42]

The ALJ discounted Dr. Barnard's testimony that "there is no indication that [Plaintiff] would be gainfully employed successfully with the current emotional instability which he exhibits" because 1) Dr. Barnard recommended six months of treatment to address this instability; 2) evaluated Plaintiff well before he began to engage in treatment; and 3) it is unsupported by Dr. Barnards' own objective findings.

First, the ALJ discounting Dr. Barnard's opinion because Dr. Barnard recommended six-months of treatment to address Plaintiff's emotional instability

---

[41] *Id.*

[42] *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

before considering job placement is a rational finding supported by substantial evidence.[43] That Plaintiff's emotional instability was opined to be remedied within twelve months was a legitimate and specific reason to discount Dr. Barnard's opinion.

Second, the ALJ's finding that Dr. Barnard evaluated Plaintiff before he began treatment is a rational finding supported by substantial evidence.[44] The records shows that when Plaintiff engaged in treatment he was able to find a dosage of medication that relieved his visual hallucinations and reduced his symptoms.[45] That the record shows Plaintiff improved with treatment after Dr. Barnard's evaluation is a legitimate and specific reason to discount the opinion.

---

[43] 20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning").

[44] A medical opinion may be rejected if it is unsupported by medical findings. *Bray v. Comm'r of Soc. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson v. Comm'r of Soc. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

[45] AR 382, 398-99, 403, 390, & 406.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 12

1

2          Third, the ALJ's finding that Dr. Barnard's treatment notes did not support

3     his opined restrictions is a rational finding supported by substantial evidence. As

4     previously mentioned, Dr. Barnard's treatment notes identified that Plaintiff

5     showed generally normal intellectual functioning and mild to no impairments, but

6     nonetheless opined that Plaintiff would need to engage in at least six-months of

7     compliance with treatment before moving forward with job placement and that

8     there is no indication Plaintiff could be successfully employed with his current

9     emotion instability.[46] That Dr. Barnard's assessment conflicted with his own report

10    was a specific and legitimate reason to discount the opinion.[47]

11          2.    Dr. Cooper

12          On November 13, 2014, Dr. Cooper performed a psychological evaluation of

13    Plaintiff.[48] The ALJ afforded great weight to Dr. Cooper's opinion.[49] Plaintiff

14    argues the ALJ failed to account for the following opined limitations of Dr. Cooper

15    in the RFC:

16

17    _____

18    [46] AR 333.

19    [47] See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995) (rejecting the examining

20    psychologist's functional assessment as it conflicted with his own written report

21    and test results).

22    [48] AR 307-16.

23    [49] AR 24.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

problems maintaining attention and concentration for extended periods of time if he does not like the situation he is in; forgetfulness when stressed; the need for moderately close supervision to ensure completion of tasks as instructed throughout a normal work shift; some problems with supervisors due to difficulty interacting with authority figures; and problems with coworkers due to personality traits.[50]

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."[51] "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."[52] To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence.[53] Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld.[54] The Court will only disturb the ALJ's findings if they are not supported by substantial evidence.[55]

Here, Dr. Cooper opined Plaintiff was able to "understand, remember, and carryout instructions for tasks involving two or three unrelated steps"; "would do

[50] ECF No. 9 at 13.

[51] *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

[52] *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

[53] *See Morgan*, 169 F.3d at 599-600.

[54] *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

[55] *Hill*, 698 F.3d at 1158.

tasks at a normal rate of speed"; "would have some problems with change"; "would have problems maintaining attention and concentration for extended periods of time if he does not like the situation he is in"; "would usually respond appropriately to normal hazards"; "would require moderately close supervision to ensure completion of tasks as instructed throughout a normal work shift"; "would have some problems with supervisors"; and "is apt to have occasional problems with coworkers because of his personality traits."[56]

The ALJ incorporated these findings into the RFC by limiting Plaintiff to interaction with others to "an environment in proximity to, but not close cooperation, with co-workers and supervisors, and should work in an environment that does not require direct interaction with the public."[57] The ALJ also limited Plaintiff's working environment to one "that is routine and predictable, where goals and plans are clearly expressed, but does have the ability to respond appropriately, distinguish between acceptable and unacceptable work performance." Although not verbatim, the RFC reflects the limitations assessed by Dr. Cooper. The RFC formulated by the ALJ reflects Dr. Cooper's medical opinion and is supported by substantial evidence. The ALJ did not err in her evaluation of Dr. Cooper's opinion.

---

[56] AR 315-16.

[57] AR 20.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

     3.    <u>Dr. Marks</u>

Plaintiff challenges the ALJ's assignment of little weight to Dr. Marks'

opinion. Dr. Marks performed a psychological evaluation of Plaintiff on October 15,

2015, and September 15, 2017.[58] In 2015, Dr. Marks diagnosed Plaintiff with

Intermittent Explosive Disorder, by history; Unspecified Anxiety Disorder;

Unspecified Depressive Disorder; Unspecified Personality Disorder with Antisocial,

Paranoid, and Borderline Traits, by history; Reactive Attachment Disorder; and

Cannabis Use Disorder that may be increasing paranoia.[59] Dr. Marks opined

Plaintiff had moderate limitations in performing activities with a schedule,

maintaining regular attendance, and being punctual within customary tolerances

without special supervision; performing routine tasks without special supervision;

and being aware of normal hazards and taking appropriate precautions. Dr. Marks

opined Plaintiff had marked limitations in asking simple questions or requesting

assistance and completing a normal workday and workweek without interruptions

from psychologically based symptoms. Dr. Marks also opined Plaintiff has severe

impairments in communicating and performing effectively in a work setting,

maintaining appropriate behavior in a work setting, and setting realistic goals and

planning independently.[60]

---

[58] AR 355-61 & 440-49

[59] AR 358.

[60] AR 358.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The ALJ discounted Dr. Marks' testimony because 1) Dr. Marks' observations were inconsistent with her marked and severe limitations; 2) Dr. Marks' "opinions stand in stark contrast to the relatively conservative care provided by [Plaintiff's] treating psychiatrist in 2017"; and 3) Dr. Marks' opinions were not supported by her own moderate findings and inconsistent with the remaining medical record.[61]

First, the ALJ's decision to discount Dr. Marks' opinion because it was internally inconsistent with her fairly normal observations is a rational finding supported by substantial evidence.[62] As the ALJ noted, Dr. Marks observed normal limitations in Plaintiff's concentration, insight, and judgment that he was capable of performing Trails A and B within normal limits; and that Plaintiff scored low average to average range results on the WAIS-IV test.[63] The ALJ rationally found that Dr. Marks' noted normal observations were inconsistent with the opinion.

Second, the ALJ rejected Dr. Marks' opinion because it was inconsistent with the treatment provided by other psychologists. As the ALJ noted, Plaintiff

_____

[61] AR 24.

[62] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that a medical opinion is evaluated as to the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole); *Orn*, 495 F.3d at 631 (same).

[63] AR 360 & 447-48.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 17

began to show improvement in his hallucinations and other symptoms when he began Risperidone in July 2017.[64] And by late 2017, Plaintiff was reporting that his symptoms were improved and that he had not experienced any auditory or visual hallucinations while taking Risperidone.[65] That the record shows inconsistencies between treatment and Dr. Marks' opined limitations is a legitimate and specific reason to discount the opinion.

Third, the ALJ's finding that Dr. Marks' opinion was inconsistent with the longitudinal medical record is rational and supported by substantial evidence. Whether a medical opinion is consistent with the longitudinal record is a factor for the ALJ to consider.[66] As the ALJ noted, Drs. Brown, Harrison, Gilbert, and Cooper opined limitations consistent with the longitudinal medical record, consisting of mild to moderate limitations, unlike Dr. Marks' opined severe limitations.[67] That the longitudinal medical record was inconsistent with Dr. Marks' opinion was a specific and legitimate reason to discount the opinion.

---

[64] AR 382, 398-99, 403, 390, & 406.

[65] *See, e.g.,* AR 396, 399 & 403.

[66] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole).

[67] *See* AR 68-71, 81-82, 94-95, & 315-16.

4. <u>Dr. Harmon</u>

Plaintiff argues the ALJ erred by not addressing Dr. Harmon's opinion. On October 29, 2015, Dr. Harmon reviewed Dr. Marks' October 2015 opinion and opined the same limitations as Dr. Marks.[68]

An ALJ must evaluate every medical opinion received.[69] However, if evidence is cumulative of other evidence specifically addressed, the ALJ is not required to address and discount the cumulative evidence.[70] Here, Dr. Harmon's opined limitations were identical to Dr. Marks' opinions and limitations, which as

---

[68] *Compare* AR 358 (Dr. Marks opined marked limitations in asking simple questions or requesting assistance and completing a normal workday and workweek without interruptions from psychologically based symptom, and severe impairments in communicating and performing effectively in a work setting, maintaining appropriate behavior in a work setting, and setting realistic goals and planning independently.) *with* AR 438 (Dr. Harmon opined marked limitations in asking simple questions or requesting assistance and competing a normal workday and workweek without interruptions from psychologically based symptoms, and opined severe limitations in communicating and performing effectively in a work setting, maintaining appropriate behavior in a work setting, and setting realistic goals and planning independently.).

[69] 20 C.F.R. § 416.913a(b).

[70] *See Magallanes v. Bowen*, 881 F.3d 747, 755 (9th Cir. 1989).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

explained above, the ALJ provided supported reasons to discount, thus, any error in failing to give specific and legitimate reasons for rejecting Dr. Harmon's opinions was harmless.

In summary, Plaintiff fails to establish the ALJ consequently errored when weighing the medical opinion evidence.

**B.    Plaintiff's Symptom Reports: Plaintiff fails to establish error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting his symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[71] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[72] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms inconsistent with the medical evidence and other evidence in the record.[73]

---

[71] *Molina*, 674 F.3d at 1112.

[72] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[73] AR 21.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[74] However, medical evidence is a relevant factor in considering the severity of the reported symptoms.[75] As explained above, the mental status exams performed indicated Plaintiff generally scored in a "normal range," which showed a none to a mild range of impairments.[76] This was a relevant factor for the ALJ to consider.

---

[74] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[75] *Id.*

[76] *See, e.g.,* AR 309-10 (Plaintiff "did not show evidence of looseness of associations or of circumstantial or tangential reasoning," "did not describe unusual beliefs or delusions," and "no longer sees [black' figures but he does hear people calling his name and talking sometimes." "Based on the above responses it is felt that [Plaintiff's] ability to maintain attention and concentration is not impaired."); AR 330-31 (Component on the Tactual Performance Test, Seashore Rhythm Test, Speech-Sounds perception Test, WAIS-IV, and Tactual Performance Test, showed no impairments to a mild range of impairments); AR 357 (Trail Making Tests Parts A and B completed without errors);

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Second, that a claimant's conditions improved with treatment is a relevant consideration for the ALJ when assessing the claimant's reported symptoms.[77] Here, when Plaintiff engaged in treatment he was able to find a dosage of medication that relieved his visual hallucinations and reduced his symptoms.[78] On this record, the ALJ reasonably concluded that Plaintiff's impairments when treated were not as limiting as Plaintiff claimed. This finding is supported by

---

[77] *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement).

[78] AR 382 (July 25, 2027 medication management session: Plaintiff started taking Risperidone 2 mg.); AR 398-99 (August 31, 2017 medication management session: Plaintiff described current mood as "much better that the medications are working. I do not feel angry. I am not having any visions but I am still hearing voices sometimes."); AR 403 (Plaintiff describes mood as a "few downs with panic attacks" after he went on a trip and forgot to take medication. Plaintiff denied further auditory or visual hallucinations.); AR 390 (November 14, 2017: Plaintiff taking Risperidone 4 mg p.o. nightly and reported hallucinations have resolved on his medication); AR 406 (December 13, 2017 progress notes: Plaintiff describes current mood as "not to bad I have not been hearing any voices or seeing anything. And I would not really say I am depressed either. I am less angry than I used to be." Plaintiff denied any further auditory or visual hallucinations since the start of Risperdal 4 mg.).

1

2
substantial evidence and was a clear and convincing reason to discount Plaintiff's
symptom complaints.

3

4
    Lastly, evidence of a poor work history that suggests a claimant is not
motivated to work is a permissible reason to discredit a claimant's claim that he is

5

6
unable to work.[79] Here, the ALJ's finding that Plaintiff's earning records suggests
that the source of unemployment is something other than the mental conditions

7

8
alleged is rational and supported by substantial evidence and a clear and
convincing reason to discount Plaintiff's symptom claims.[80]

9

10
    In summary, Plaintiff fails to establish the ALJ erred by discounting
Plaintiff's symptom reports.

11

12

13

14
_____

15
[79] *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); 20 C.F.R. § 404.1529

16
(work record can be considered in assessing reported symptoms); 20 C.F.R. §

17
416.929 (same).

18
[80] *See, e.g.,* AR 341 ("Although [Plaintiff] states that he is motivated to make

19
changes in his life and get a job, he also appears to be struggling with motivation to

20
change, and appears somewhat content without a job."); AR 363 (Plaintiff states he

21
is still looking for a job but less "as he is feeling 'comfortable' with his situation.");

22
AR 375-76 (Therapist assisted Plaintiff with resume and supplied him with a print

23
out of two pages of job opportunities).

**C.    Lay Witness: Plaintiff fails to establish error.**

The ALJ discounted Plaintiff's guardian's statements because they were consistent with Plaintiff's allegations.[81] Because these statements are similar to Plaintiff's symptom reports, and the ALJ properly discounted Plaintiff's symptom reports, the ALJ needed only to point to the same reason for discounting this lay testimony.[82] There were germane reasons for discounting Plaintiff's guardian's statements.

**D.    Step Five: Plaintiff fails to establish error.**

Plaintiff argues that the ALJ's hypothetical failed to consider the limitations set forth by his providers. However, this argument merely restates Plaintiff's earlier allegations of error, which are not supported by the record. Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[83]

---

[81] AR  25.

[82] An ALJ must consider the testimony of lay witnesses in determining how an impairment affects the claimant's ability to work, and, if the lay witness statements are rejected, the ALJ must give germane reasons for discounting such statements. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).[82]

[83] *See Magallanes*, 881 F.2d at 756–57 (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 9**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 13th  day of May 2020.

_s/Edward F. Shea_
EDWARD F. SHEA
Senior United States District Judge
